UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **In re Amyris, Inc. Shareholder Derivative Litigation** | Case No. 17-cv-04719-WHO <br><br> **ORDER GRANTING MOTION TO DISMISS** <br><br> Re: Dkt. No. 24 |

In this shareholders' derivative class action, plaintiffs allege that defendants Amyris, Inc. and Amyris's CEO, CFO and members of its board,[1] violated their duties to the company by taking an equity stake in lieu of a cash payment for allowing a company to license Amyris's intellectual property. Complaint ¶¶ 4-6. The defendants allegedly also failed to disclose that the equity stake would cause a reduction in the company's projected revenue for 2016 and when that shortfall was disclosed, the company's stock dropped "erasing almost $614 million in market capitalization." *Id*. ¶ 9. But as defendants argue in their motion to dismiss, the decision to take stock in lieu of cash was a reasonable business judgment, plaintiffs otherwise wholly fail to allege a breach of a fiduciary duty, and plaintiffs fail to plead demand futility to excuse the failure to make a pre-suit demand. Defendants' motion is GRANTED with leave to amend.

## BACKGROUND

On December 30, 2016, Amyris entered into a license agreement with Phyto Tech Corp. (d/b/a Blue California). FAC ¶ 4. Under the agreement, Blue California was granted a license to

---

[1] The individual defendants are John Melo (Amyris's CEO); Kathleen Valiasek (Amyris's CFO); Geoffrey Duyk (an Amyris director); John Doerr (an Amyris director); Carole Piwnica (an Amyris director); Fernando de Castro Reinach (an Amyris director); Abdullah bin Khalifa Al Thani (an Amyris director); R. Neil Williams (an Amyris director); Patrick Yang (an Amyris director); Abraham Klaeijsen (an Amyris director); and Christophe Vuillez (an Amyris director).

use certain of Amyris's intellectual property for research and commercial purposes. In exchange, Amyris was supposed to receive a $10 million cash payment. *Id*. The Board, however, caused or approved an amendment to the agreement with Blue California and decided instead that Amyris would take an equity stake in SweeGen, Inc. ("SweeGen"), a Blue California affiliate. *Id*. ¶ 5. The defendants never told the stockholders about their decision to retract a large cash payment due to Amyris in favor of a minority equity stake in SweeGen and on March 2, 2017, caused Amyris to issue a press release that touted Amyris's financials and stated that the aggregate revenues for 2016 would include the $10 million cash payment from Blue California that the Individual Defendants had already renegotiated. *Id*. ¶¶ 6, 51. That press release, titled "Amyris More Than Doubles Revenues over 2015 And Provides Strong Growth Outlook," announced revenues of $77.2 million for fiscal year 2016. *Id*. ¶ 51. The same day, in an earnings call, defendant Melo reiterated the 2016 revenue figures. *Id*. On April 3, 2017, Amyris announced that it could not timely file its Form 10-K for the fiscal year ending December 31, 2016, but again claimed that the aggregate revenues for the year were $77.2 million. *Id*. ¶ 52.

When Amyris did announce its yearly results on April 17, 2017, it stated that its 2016 revenue totaled $67.2 million, $10 million less than previously reported. *Id*. ¶¶ 7, 54. On April 18, 2017, Amyris explained its reported revenue figures and revealed for the first time that it was "unable to recognize $10 million in . . . revenue" because of the defendants' decision to take the equity stake in SweeGen rather than the guaranteed cash payment under the original license agreement. *Id*. ¶¶ 8-9, 55. As a result of this disclosure, Amyris's stock decreased more than 20% in a two day trading loss, to close at $8.34 per share on April 19, 2017, and erasing almost $614 million in market capitalization. *Id*. ¶¶ 9, 56.

On April 20, 2017, a class action complaint was filed against Amyris related to the stock drop. This derivative action and a second substantially identical action followed on August 15, 2017 and August 24, 2017. The three cases were related, the two derivative action consolidated, and plaintiff Bonner appointed as lead plaintiff for the derivative action on September 19, 2017. Dkt. No. 14. The only cause of action asserted in the derivative action is a breach of fiduciary duty claim.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the Court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If the court dismisses the complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). In making this determination, the court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir.1989).

**DISCUSSION**

**I.  BREACH OF A FIDUCIARY DUTY**

Defendants contend that plaintiffs have failed to adequately allege a violation of any

fiduciary duty.[2] In Opposition, plaintiffs argue they have adequately alleged a breach of the duties of loyalty and good faith by defendants' "knowingly allowing Amyris to report revenues that included the $10 million cash payment in the Blue California transaction despite the fact they had decided to take stock instead of the cash payment" and, therefore, knowingly inflating their revenue figures. Oppo. at 10. In Reply, defendants argue that – given plaintiffs' clarification that they are not challenging the business judgment to accept equity in lieu of cash but only the failure of defendants to disclose that fact and the consequences for when revenues would be recognized – the Complaint does not adequately allege that the disclosures themselves were false and made in bad faith, disloyally, or without adequate care. Reply at 2.

Defendants contend, generally, that a director's failure to make or correct a disclosure cannot form the basis of a breach of the duty of loyalty because that duty mandates "that the best interest of the corporation and its shareholders takes precedence over any interest possessed by a director, officer or controlling shareholder and not shared by the stockholders generally." *Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345, 361 (Del. 1993). Defendants point out that the Complaint is devoid of any allegations that any of the directors were acting in their own self-interests or placing any interests over the corporation's interests.

As to the duty of good faith, defendants submit that duty is violated only when a director "(1) intentionally acted with a purpose other than that of advancing the best interests of [the corporation], (2) acted with the intent to violate applicable positive law, or (3) failed to act in the face of a known duty to act, demonstrating a conscious disregard for his duties." *Miele v. Franklin Resources, In*c., 2015 WL 4934071, at *19 (N.D. Cal., Aug. 18, 2015) (citing *Stone ex rel. AmSouth Bancorporation v. Ritter*, 911 A.2d 362, 370 (Del.2006)). Defendants contend that plaintiff has failed to allege any of those actions.[3]

However, under Delaware law, "directors who knowingly disseminate false information

---

[2] Both sides agree that the laws of Delaware apply to the resolution of this motion.

[3] The "consciously disregarding a known duty" prong mans a director "utterly failed" to meet his or her duties, and as long as board members at least attempt to meet their duties, their incompetence in doing so does not matter. *Chen v. Howard-Anderson*, 87 A.3d 648, 683 (Del. Ch. 2014).

that results in corporate injury or damage to an individual stockholder violate their fiduciary duty, and may be held accountable in a manner appropriate to the circumstances." *Malone v. Brincat*, 722 A.2d 5, 9 (Del. 1998). That duty is *a part* of the directors' "general fiduciary duty of loyalty and good faith" and is violated "by knowingly disseminating to the stockholders false information about the financial condition of the company." *Id*. at 10; *see also id*. at 14 ("When the directors are not seeking shareholder action, but are deliberately misinforming shareholders about the business of the corporation, either directly or by a public statement, there is a violation of fiduciary duty.").

As defendants point out, there are no allegations in the Complaint that any of the defendants – in either the March 2, 2017 press release and earnings call or the April 3, 2017 SEC filing – *knowingly disseminated false information* about the company's 2016 revenue figures. In other words, there are no allegations that any defendant publicly confirmed the company's 2016 revenues were $77.2 million *despite knowledge* that the $10 million equity deal would not be recognized as revenue until 2017.[4]

Plaintiffs are given leave to amend to state facts in support of their theory that the March 2 or April 3 disclosures were knowingly false in order to state their claim.

## II. DEMAND FUTILITY

Defendants also move to dismiss because plaintiffs failed to make a pre-suit demand for legal action, as required under Federal Rule of Civil Procedure 23.1(b), or allege facts showing that a pre-suit demand would have been futile. "The purpose of this demand requirement in a derivative suit is to implement the basic principle of corporate governance that the decisions of a

---

[4] Subsequent cases have described the scienter requirement for a *Malone*-type false or misleading disclosure case (unconnected to a request for stockholder action) as "similar to, but even more stringent than, the level of scienter required for common law fraud." *Metro Communication Corp. BVI v. Advanced Mobilecomm Technologies Inc.*, 854 A.2d 121, 158 (Del. Ch. 2004). To the extent plaintiff is alleging that a director may have without knowledge made a misrepresentation and then later "knowingly and in bad faith (in other words, 'dishonestly') fail[ed] to correct the misleading impression created by the earlier communication," *Metro Communication Corp. BVI v. Advanced Mobilecomm Technologies Inc.*, 854 A.2d 121, 159 (Del. 2004), plaintiff must more clearly lay out that theory by pleadings facts regarding the timeline, facts showing dishonesty, and facts demonstrating reliance. *Id*. at 159 ("these *Malone* claims will be difficult to prove because Metro must ultimately demonstrate both scienter and reasonable reliance.").

corporation—including the decision to initiate litigation—should be made by the board of directors or the majority of shareholders." *Rosenbloom v. Pyott*, 765 F.3d 1137, 1148 (9th Cir. 2014) (internal quotations omitted). "To show futility under Delaware law, a plaintiff must allege particularized facts creating a reasonable doubt that (1) the directors are disinterested and independent, or (2) the challenged transaction was otherwise the product of a valid exercise of business judgment." *In re Silicon Graphics Inc. Securities Litigation* (9th Cir. 1999) 183 F.3d 970, 990 (9th Cir. 1999), overruled on other grounds.

On the second prong, the "issue is whether plaintiffs have alleged particularized facts creating a reasonable doubt that the actions of the defendants were protected by the business judgment rule in determining whether demand was futile," and in assessing that on a motion to dismiss, plaintiffs "are entitled to all reasonable factual inferences that logically flow from the particularized facts alleged, but conclusory allegations are not considered as expressly pleaded facts or factual inferences." *Brehm v. Eisner*, 746 A.2d 244, 255 (Del. 2000). The issue here, as noted above, is that plaintiffs have not adequately alleged facts supporting a breach of the directors' duties.

On the first prong, plaintiffs challenge the independence of six of Amyris's eleven Board members based on those board members' connections (employment, ownership interests) in companies who own Amyris stock and are otherwise associated with Amyris. Plaintiffs allege that because defendant Melo, the Amyris CEO, controls these Directors' and their associated entities' access to "future" deals with Amyris, they are not independent. However, "[a]t the pleading stage, a lack of independence turns on 'whether the plaintiffs have pled facts from which the director's ability to act impartially on a matter important to the interested party can be doubted because that director may feel either subject to the interested party's dominion or beholden to that interested party.'" *Sandys v. Pincus*, 152 A.3d 124, 128 (Del. 2016) (quoting *Delaware County Employees Retirement Fund v. Sanchez*, 124 A.3d 1017, 1024 n.25 (Del. 2015)).

Here, there are no allegations that Melo (or any of the Directors) benefitted from the alleged false disclosures (*e.g.,* none of them made any money from the false disclosure), that

would make them an "interested" party subject to potential liability from suit.[5] Similarly, there are no facts pleaded that Melo has the power or interest in controlling these other Directors' access to "future" deals such that they would be beholden to Melo and not independent. The allegations here, for example, simply do not rise to the level of the allegations present in *Sandys v. Pincus*, 152 A.3d 124, 128 (Del. 2016), relied on by plaintiffs. *See id*. at 131 ("These relationships . . . indicate that [specific directors] have a mutually beneficial network of ongoing business relations with [interested directors] that they are not likely to risk by causing Zynga to sue them."); *see also id*. at 133 (noting interested director possessed 61% of the voting power). Finally, as discussed above, because plaintiff has not adequately alleged that Melo (or any other Director) violated any fiduciary duty, his "interested" status cannot be hinged to any potential liability.

Plaintiffs have not adequately alleged futility of pre-suit demand.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is GRANTED with leave to amend. Any amended complaint must be filed within twenty days of the date of this Order.

**IT IS SO ORDERED.**

Dated: March 9, 2018

William H. Orrick
United States District Judge

---

[5] This is not a case, for example, where plaintiff challenges an exemption allowing fellow-directors to sell stock on favorable terms, creating obviously "interested" parties who faced significant personal liability and who might exert control over their fellow board members. *Sandys v. Pincus*, 152 A.3d 124, 127 (Del. 2016).

7